The second case on the clock is 22-6C-1046. The people of the state of Illinois, Plainton, Appalachia, v. Salvador Flores, Defendant Tuttle. Arguing on behalf of the defendant's counsel, Mr. James K. Levin. Arguing on behalf of Plainton, Appalachia, v. Mary A. Clinton. Both sides ready to proceed? Counsel, when you're ready. Thank you, Your Honor. Good morning, Your Honor. The first issue I'd like to address is the standard of review here on the motions to suppress. That's the issue we have in this case as well. The motion to suppress should have survived a directed finding. And on the standard of review, the state and the defense have a respectful disagreement on what that is. The defense argues that the ultimate decision whether to grant or deny a motion to suppress, and likewise a motion for a directed finding, is the de novo standard of review. And the state argues that the standard of review is the manifest way of the evidence stamp, which is a more deferential standard of review. So I'm arguing that the de novo standard applies, and that's supported by well-established Illinois Supreme Court case law, as I cited in the brief. And I believe that the third district cases I would respectfully submit, People v. Lomelli and People v. Green, are incorrectly decided. And I would request that the court express disagreement with those cases. Are there any factual issues that are really in dispute here? Well, there are plenty of factual issues here. If I may jump over to the probable cause argument, is the state argues that there's probable cause because they observed a drug transaction. However, it was brought out that the detective did not actually see any drugs being transferred. He did not see cocaine being transferred. That's what he said in his testimony. And I'd like to highlight his trial testimony. But what I'm getting at is that's not in dispute. I mean, there's not one witness that said he saw it and one witness said he didn't see it or anything of that nature. Basically, what we have is a set of facts here that are not in dispute. What's in dispute is how we look at those facts. Well, there is a dispute as to whether there was an exchange. Because I'd like to highlight the detective's testimony at trial, which differed somewhat from the probable cause hearing. At 4, I believe it's 439 of the record, he stated on cross-examination, 439, 440, that he actually did not see any object being transferred from the defendant to Pedraza and didn't see any object transferred from Pedraza to the defendant. So that differs from the probable cause hearing to some extent because the probable cause hearing, he stated that there was a transference, but he didn't see what the object was here. He didn't even see an object being transferred. That's what he said in his testimony. Can we consider the trial testimony when the objection was not renewed at trial? I did argue that, that the trial testimony should be considered. I cited case law. The State did not dispute that contention. I would argue that any argument that trial testimony should not be considered, I would argue that it was forfeited because the State did not argue the issue. The State did not cite Peebles v. Ramos, and I'm not familiar with it, but I am familiar with the long list of cases, one in particular, Peebles v. Adams, 1989, Illinois Supreme Court, which is not cited in my brief, but I happen to recall the case. But that issue, that case states that the State is responsible for forfeiture to the State to the same extent as the defense. So I'm at a little bit of a loss to argue the issue because it wasn't raised by the State. However, the State did not object to anything with regard to testimony at trial as far as that being considered on the probable cause issue. Even the testimony at the probable cause area was lacking because the detective did not state that he saw cocaine being transferred. So probable cause was lacking. I cited two cases, Byrd, B-Y-R-D, and a second case, which is escaping me right now, Peebles v. Moore, Peebles v. Oliver, three cases. So on standard of review de novo, another issue regarding standard of review that was addressed in the briefs is whether the evidence should be construed in the light most favorable to the defense. That's another argument that was made. The State and the defense have a respectful disagreement on that as well. The State argues that deference to the non-moving party should not apply. However, again, the defense relies on Peebles v. Miller, 2nd District, 2009 case. And Justice O'Malley, speaking for the Court, held that the evidence on a motion to suppress where the motion is granted through a directive finding should be construed in the light most favorable to the party that has a move for the directive finding. So I rely strongly on that case. The 3rd District cases, O'Malley and Green relied on a civil case. Zankle, that's a 2nd District case. But those, that's where I believe that the 3rd District cases are an error. And certainly on the standard of review is really an outlier to say that the de novo standard doesn't apply to a motion to suppress is quite unusual considering the region of Illinois Supreme Court cases that say that the de novo standard applies. So I'd also argue that this Court should be in the same position as the trial court, should not be deciding the credibility of witnesses, should not be giving deference to the trial court's findings. That's what the standard of review means. I would argue that that applies here. So unless the Court has any questions further about my discussion on the standard of review, I'll move on. I have covered the probable cause issue that the detective did not actually see objects being transferred as he testified at the trial. Does he actually have to see objects specifically being transferred to establish probable cause? Well, probable cause is not based on a firm set of rules. So I don't want to say yes. It's a common sense application based on logic and the facts of the case. It's a fact-driven analysis. So I'm not going to say that he has to see that. But the case law suggests and the totality of the circumstances here suggests that he did not actually see an object being transferred according to his testimony. So then you would look at the other facts that are known to the police officer at the time, right? We would look at all the facts, certainly all the facts. Right. This is one fact in many, but certainly a very key fact. And the reason why it's such a key fact is the precedent emphasizes that fact. The three cases that I cited, which I asked the court to consider, the Burke case and the Moore case and the other one that I cited a minute ago. So another problem with the state's position in my judgment is they say there is probable cause to arrest. I just explained why there isn't, but they didn't actually arrest him when they instructed this other officer, Officer Blum, G-L-O-M-B, to stop the car. They didn't. Blum did not arrest the defendant. Does he have to? Well... If the investigation is ongoing, does he have to make an arrest? Well, he doesn't have to. I don't want to be flip. I'm trying to answer the question the right way. He doesn't have to do anything. That's what I'm about to say. But please excuse me. I don't want to make light of the question. I'm just trying to answer as best I can. But as far as, I mean, it does show, you know, for example, for a Terry stop, they have to have the purpose of that is to detect crime and apprehend criminals so that stop is not done for the purpose according to Terry principles, which is to apprehend and to stop and to investigate. They didn't investigate criminal activity at all. All they did was ask for his name. Well, isn't that part of the investigation? Well, if they had asked him his name and asked him about the alleged drug activity, had they questioned him about the drug activity, had they done more than that, I would tend to agree. But just stopping somebody to ask their name is really not consistent with what a Terry stop is all about. That's what I would contend. Well, the constitutional event is the stop, correct? Yes, the stop. Let's assume for a minute that they had a reasonable articulable suspicion to stop the vehicle or even probable cause to stop the car because of what the officer saw. Why isn't that enough? Why is what happens after that relevant at all? Well, I believe the Fourth Amendment is triggered not only by the stop itself but by what happens afterwards based on Terry, based on probable cause issues. For example, Terry discusses and its progeny discuss not only the stop itself but what is the purpose of the stop. The purpose of the stop isn't just to ask someone their name, but it's to investigate criminal activity and apprehend criminals. So what evidence should be suppressed from that stop? I mean, there's a reason for a constitutional claim, and that is to suppress the evidence that was seized. The only evidence seized was his identity, correct? Yes. So I am asking that that be suppressed, his identity and his address, which led to a photograph being obtained, which led to the police coming to his home 22 days later to arrest him, which led to the police taking him to the police station, which led to an incriminating statement. So the fruit of the poisonous tree is what I argue is the proof. Is there an issue of inevitable discovery here? I mean, Vasquez, Pedraza informed on him at some point in time, correct? That's what the state argued in its brief. But Pedraza certainly, I don't believe the inevitable discovery rule applies. I mean, Pedraza is a biased witness who's arrested for drug activity. He's going to want to do whatever he can to curry favor with the police. And anything he says to the police I would respectfully submit would not be credible or reliable considering his status. And certainly the information that the police got from stopping the vehicle, Mr. Flores, the defendant's name and address, leading to a photograph, certainly that's a contributing factor to what came after, to the evidence that was obtained against Mr. Flores at a later time. So I would argue that that doctrine doesn't apply. And again, it wasn't argued in a trial court either, so there is an issue of forfeiture. So, Your Honor, I think I've covered all the issues. One more is the unconstitutional delay in effectuating the arrest, a 22-day delay from what the police allegedly observed in the Burger King restaurant at the time he was arrested at his home. And in this situation, I rely on the Second District case, People v. Scudder, S-C-U-D-D-E-R, where the police committed a Fourth Amendment violation by manipulating the time of arrest so that it occurs at a place where there was a delay in effectuating the arrest.   I think it's a matter of the police's choosing to use it as a pretext to engage in other kinds of activity, like searching his premises. That's what the police did, is search his house. So unless the court has to do that. Is there any evidence that there were – that the police here had additional opportunities to arrest him that they didn't take? Well, certainly, an inference could be established there. I don't think the State raised that issue. But if the police gathered a name and address and got a photograph and just waited the 22 days, then they could have arrested him well before the 22 days. Where would they have arrested him? If it was 18 days at his home, presumably they would still have searched his home. If it was the day after they learned of his address, that was the only place they knew of to arrest him, correct? I mean, based on this record. Based on this record. We don't know everything in the record here. We don't know everything that happened, but there is – the police also testified that the reason why they didn't arrest is because they wanted to use the information they had to obtain for further investigation. And that sort of leads by the – that leads to the concerns raised by the Scudder case, you know, using a delay to accomplish certain activities that they wouldn't be able to accomplish otherwise. So I would say Scudder does apply. But how is the delay the triggering event? They only had his home address. So why is it 22 days makes the search of his home more onerous than had they done it the day after they learned of his address? That's what you keep arguing is delay. Show me how that matters. The delay – because the delay allows the police to – granted there's inferences based on the record that I have to argue here. So the inference is that they're engaged in further investigation. They could be observing him. They could be watching him. They could be – so they're doing their investigation within the scope of the 22 days, and they may have additional information that they obtained by inappropriate means that they may not have had on day one. That's why they wanted to wait. They wanted to wait for a purpose. But none of that is in the record. These are inferences that you're drawing, correct? Inferences based on the record. What new inculpatory evidence was discovered in his home or upon his arrest 22 days later? There was no evidence submitted as to inculpatory evidence obtaining the home. But they did – Doesn't that distinguish this case from Scudder? But they still invaded his home. So there is a constitutional injury that occurred because the police entered his home to search. Then you file a civil rights action. What's going to happen in this case? What are we suppressing? If there's a constitutional violation of arresting him, what are we doing? I would request the court suppress the confession that was made at the police station, especially under the fruit-of-the-poisonous-tree claim. Because when you have a constitutional violation, that's based on the original Wong Sung case in Brownfield, Illinois. It's a fruit-of-the-poisonous-tree. There's a constitutional violation, Fourth Amendment violation. And the end result, the direct result of that violation was the illegally obtained evidence, the confession at the police station, which I'd ask that be suppressed. So in conclusion, I would argue that the court should reverse – should suppress the evidence, reverse the conviction, or on the alternative, demand for a new suppression agreement. Thank you very much. I still have an opportunity for reply. Thank you. Good morning, Your Honors. Counsel, may it please the Court, Mary Fleming on behalf of the people this morning. I'm jumping into this case, taking over for someone else, and in doing so I, of course, reviewed the record and the briefs to prepare for today. And I just wanted to point out one thing that I think was kind of lost in the record, a small point. We're talking about three motions that defendant litigated. Those motions should suppress. A year previously, exactly to the day, his previous counsel had filed a motion to suppress as well, and that's page C53 of the record. And on page 58, paragraph 44, defendant's counsel says that the basis for the stop was the defendant – not the defendant, the driver not wearing a seat belt. And so that just adds another layer to the way that the original stop was proper and the defendant's bootstrapping the original stop to the finding of his identity, to arresting him at his house, to the statements that he wants suppressed. And as well, that would have been found regardless, so the people would still continue to assert that. And as well, the issue of whether we forfeited the point in Ramos, we're, of course, happy to do further briefing on that if you need to. And I'm happy to answer any further questions, but otherwise we'll just rest on our brief at this point and ask that this Court affirm the judgment. Do you believe that Lomelli was correct on the standard of review? I do. It's exactly on point. And defendant's argument with that case seems to be it's a third district case based on civil law, and civil law is different, it doesn't apply. But Lomelli and Green actually cite back to one of this Court's opinions in People v. Myths, which is actually a criminal case, and they seem to be boiling down what this Court said at that point into a very easy ten-part test. And ultimately, regardless, it doesn't matter in this case whether this Court uses de novo review or manifested the evidence. And actually, I would submit that what defendant is proposing is practically difficult for this Court to do, that you use de novo review, but you construe the evidence in a light most favorable to him at the same time. You can't do both things at the same time. It's practically very difficult to do. Your bottom line, though, is regardless of the standard of review, the State prevails. Absolutely, Your Honor. Thank you. Good morning again. So what I'll do is I'll just address the points that the State made. I believe, the rule of argumentative, I believe the State argued about the driver not wearing a seatbelt and that being the basis for the stop. However, the police were very adamantly clear that there was no traffic violation at all. That's in the record, discussed very carefully in my brief. And I even highlighted in a separate section, no traffic stop violation whatsoever here. And plus, the State agrees in the brief. It's not that they failed to address it or acquiesce. They actively agreed with the defense proposition that there's no traffic violation here. And as for the standard of review, the State argued that Lamellian cited to a criminal case. I don't recall that. I did read it carefully, and my recollection is they did not cite to a criminal case. They cited to a civil case, which is the 2nd District Zankle, Z-A-N-K-L-E decision. And they cited to that case. There's no criminal case cited in Lamelli. Or the other case, Green, which, oh, yeah, I think maybe Lamelli did cite Green, but they all go back to Zankle. But I defer to the case law. I defer to what the case says. But there's no discussion of Lamelli other than tracing its roots back to Zankle, which is a civil case. On the other hand, we have the 2nd District case, People v. Miller, which was, and I really do strongly argue that case. What we have is Justice Lamelli, on behalf of the 2nd District Appellate Court, stating that on a motion to suppress, where there was a grant of a directive finding, he stated two things that I want to underline. One is that no low standard of review. And the other thing Justice Lamelli cited was that the evidence should be construed in the light most favorable to the party not moving for the directive finding. So unless the Court has any further questions, I have nothing further. I would thank the Court. Anything else? No. All right. Then thank you very much. Thank you. Excellent arguments this morning. The Milva State's relying heavily on its brief. And we will be in recess until our next argument at 10.30.